IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DONALD WAYNE HULL,                     §
TDCJ-CID NO.673637,                    §
     Plaintiff,                    §
                                       §
v.                                     §          CIVIL ACTION H-05-1654
                                       §
R.D. LANGSTON, *et al.*,                §
                                       §
     Defendants.                   §

## OPINION ON DISMISSAL

Plaintiff, a state inmate proceeding *pro se* and *in forma pauperis*, filed a civil rights action under 42 U.S.C. § 1983, alleging that prison officials failed to protect him from other inmates.  For the reasons to follow, the Court will dismiss this case pursuant to 28 U.S.C. § 1915(e)(2)(B).

## BACKGROUND

In his original complaint, plaintiff claimed that he was transferred to the Goree Unit on June 23, 2004, and housed in the general population even though defendants B.R. Purvis, J.A. Walton, and K.A. Bond knew he was a homosexual who had been assaulted by a staff member on the Garza West Unit.  (Docket Entry No.1).  In his amended complaint, plaintiff contends that he was housed for the first three weeks in the general population on the Goree Unit.  (Docket Entry No.13).  On July 14, 2004, he was transferred to the Estelle Unit, where he remained for three days.  (*Id.*).  On July 17, 2004, he was transferred back to the Goree Unit.  (*Id.*).

Plaintiff also claimed in his original complaint that defendants R.D. Langston, L.D. Baker, and V.A. Davis harassed him and retaliated against him in some unspecified way.  (Docket Entry No.1).  He further claimed that on July 1, 2004, Officer B.D. McMillen retaliated against him by writing a disciplinary charge against him for her co-workers Purvis, Walton, and Bond.  (*Id.*).

In his amended complaint, plaintiff adds the State Classification Committee and S.O. Woods, Jr. as defendants. (Docket Entry No.13). He charges that all defendants knew the Goree Unit was understaffed and that the staff in place was not properly trained to protect inmates, like himself, from violent predatory inmates. (*Id.*).

In his more definite statement, plaintiff claims that he told defendant Purvis that he had been assaulted by a TDCJ-CID officer on the Garza West Unit. (Docket Entry No.27). Purvis responded that TDCJ computer records showed that plaintiff was having problems with inmate gang members. Plaintiff complains despite knowledge of plaintiff's problem with gangs and his verbal request for safe-keeping, Purvis assigned him to the general population on the Goree Unit. Plaintiff claims defendants Purvis, Walton, and Bond discriminated against him when they told him that he was too big to place in safe-keeping. (*Id.*). Plaintiff implies that defendants Walton and Bond were responsible for plaintiff's assignment to the Goree Unit on June 23, 2004, although he does not indicate their role in the assignment. (*Id.*).

In his amended complaint, plaintiff claims that on June 28, 2004, he discovered that members of a gang, whose members had previously assaulted him, had been transferred to the Goree Unit. (Docket Entry No.13). He feared for his safety so he filed a grievance alleging that supervisors Purvis, Walton, and Bond had discriminated against him and placed him in serious risk of harm. He requested safekeeping. Warden Baggett and supervisor Purvis reviewed the grievance but did not transfer the gang members or plaintiff off the unit. (*Id.*).

Plaintiff contends on July 1, 2004, at approximately 3:50 p.m., he was beaten and raped by two gang members, armed with shards and a metal pole, in his cell. (*Id.*). The assault lasted for about ten minutes. Plaintiff claims during the last five minutes, defendant McMillen watched. She

2

yelled at the gang members to stop but did not take any measures to stop the assault.  The assault stopped when another guard appeared.  McMillen looked at plaintiff and left.  The gang members were not taken to segregation.  Plaintiff lay on the ground for ten minutes, without any medical attention.  (*Id.*).

Around 9:22 p.m. that night, McMillen told plaintiff to go to the lieutenant's office, where defendants Langston, Baker, and Davis interrogated him for about thirty minutes.  (*Id.*)  Defendant Langston did not allow plaintiff to speak, so he was unable to tell what had happened earlier or to request medical attention.  (Docket Entry No.27).  Instead, Langston questioned plaintiff about the assault by the guard on Garza West, which occurred on May 26, 2004.  (*Id.*).  Defendant Baker, Langston's supervisor, did not correct Langston for his misconduct, and defendant Davis, who is Baker's and Langston's supervisor, did not correct either officer.  No one took him to the infirmary nor attended to his medical needs; consequently, he suffered prolonged and extreme pain and unnecessary complications in the treatment of his injuries.  Plaintiff does not state what complications he suffered in the treatment of his injuries.  He indicates that he did not ask for nor receive treatment for his alleged injuries.  (*Id.*).

Plaintiff claims that defendants Baggett, Purvis, Langston, Baker, Davis, Bond, and Walton did not arrange for him to be placed in safekeeping because of a policy instituted by the State Classification Committee.  (*Id.*).

On July 16, 2004, (presumably while he was still on the Estelle Unit) plaintiff discovered that his cell-mate on the Goree Unit was a member of the Crips gang.  That afternoon he filed an I-60 stating the same and requesting a transfer to another unit or to administrative segregation.  He

gave the request to defendant Garza.  (Docket Entry No.13).  Plaintiff did not file a life endangerment report.  (Docket Entry No.27).

On July 17, 2004, around 11:00 a.m., a gang member slapped him and demanded sex from him in his cell.  (Docket Entry No.13).  No guard was present on the unit at that time.  However, when the unit was released for lunch, the gang member stopped his assault.  Plaintiff located Garza in the chow hall and told him what had happened.  Shortly thereafter, Garza escorted plaintiff to the transient-safekeeping part of the Goree Unit.  The left side of plaintiff's face was red and bruised from the slap.  Plaintiff reported severe pain in his jaw and face.  Immediate medical treatment was not provided although "it was not clear that plaintiff urgently needed emergency medical treatment." (*Id.*).  Plaintiff did not file a grievance against Garza.  (Docket Entry No.27).  Plaintiff was transferred to the Coffield Unit on September 4, 2004.  (*Id.*).

Plaintiff seeks injunctive, declaratory, compensatory, and punitive relief on the following grounds:

1.   Defendants were deliberately indifferent to the risk of serious harm to plaintiff from other inmates in violation of the Eighth Amendment;

2.   Defendant McMillen violated the Eighth Amendment when she failed to intervene in the ongoing assault against plaintiff on July 1, 2004; and,

3.   Defendant Langston, Baker, Davis, and McMillen were deliberately indifferent to plaintiff's serious medical needs on July 1, 2004, in violation of the Eighth Amendment.

(Docket Entry No.13).

## DISCUSSION

## Standard of Review

The complaint in this case is governed by the Prison Litigation Reform Act ("PLRA"). Because plaintiff is a prisoner who proceeds *in forma pauperis*, the PLRA requires that the district court scrutinize the basis of the complaint, and, if appropriate, dismiss the case at any time without service of process if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief.  42 U.S.C. 28 U.S.C. § 1915(e)(2)(B); *see also* 42 U.S.C. § 1997(e)(c) and 28 U.S.C. § 1915A(b).  In conducting that analysis, a prisoner's *pro se* pleading is reviewed under a less stringent standard than those drafted by an attorney and is entitled to a liberal construction that includes all reasonable inferences, which can be drawn from it.  *Haines v. Kerner*, 404 U.S. 519 (1972); *Alexander v. Ware*, 714 F.2d 416, 419 (5th Cir. 1983).

A complaint may be dismissed as frivolous if it lacks any arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges violation of a legal interest which clearly does not exist." *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999) (citing *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998)).  A review for failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard used to review a dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir. 2002).  Under that standard, courts must assume that plaintiff's factual allegations are true, and a dismissal is proper only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations.  *Id.* (citations omitted).

<u>Omissions</u>

Although the Court asked plaintiff whether he had filed other lawsuits in its Order for More Definite Statement (Docket Entry No.22), plaintiff did not report that two suits that he had previously filed had been dismissed as frivolous in the Eastern District of Texas. *See Hull v. Porras*, Civil Action No.9:96-CV-438 (E.D. Tex. Nov. 20, 1997); *Hull v. Johnson*, Civil Action No.5:98-CV-197 (E.D. Tex. Oct. 9, 1998). He also failed to report that he had filed a habeas action in this Court on August 13, 2004, in which he complained of the disciplinary conviction that he received for masturbating in front of defendant McMillen on July 1, 2004. *See Hull v. Dretke*, Civil Action No.4:04-CV-3235 (S.D. Tex.).

Plaintiff's petition for writ of habeas corpus in Civil Action No.4:04-CV-3235 states the same allegations that plaintiff made in his original complaint, *i.e.*, McMillen wrote a disciplinary case against him in retaliation for some action taken against defendants Purvis, Whalton, and Bond, and to justify their failure to provide plaintiff with safekeeping with respect to his sexual orientation. *Id.*, Docket Entry No.1.

Plaintiff also alleged the following in his habeas petition in Civil Action No.4:04-CV-3235:

1.      The evidence was insufficient to support the disciplinary conviction because the charging instrument did not state that plaintiff masturbated in such a way that others became aware that he was doing so in public;

2.      The charging instrument failed to state a TDCJ rule violation; and,

3.      Plaintiff was denied twenty-four hours written notice of the charges against him.

No.4:04-CV-3235, Docket Entry No.1. The Court takes judicial notice that plaintiff does not deny in his habeas petition that he was masturbating in his cell and does not allege that he was raped or that McMillen watched as he was raped on July 1, 2004.

The Court also takes judicial notice of the disciplinary records in Docket Entry No.28 of No.4:04-CV-3235, which reflect the same time frame of events on July 1, 2004, as plaintiff's pleadings in the present case.  The disciplinary records show the following:

1.   Defendant McMillen charged that on July 1, 2004, at 3:55 p.m., plaintiff "did expose his penis to (Officer McMillen, CO III) with intent to gratify the sexual desire of Offender Hull, Donald Wayne, TDCJ No. 006763637."  *Id.* Attachment 1 at 12.

2.   McMillen stated in the offense report that she was conducting a shake-down. Plaintiff knew she was on the run.  When the shake-down was completed, she walked past his cell.  Plaintiff was standing at the front of the cell, facing the run, with his boxers halfway down and his penis aroused, masturbating.  She ordered him to stop and he did.  She conducted another shake-down.  When she came past his cell the second time, plaintiff was standing at the front of his cell with his penis pulled through the hole of his boxers fondling himself. McMillen asked plaintiff if he had a problem and he responded by nodding his head and smiling.  She took his identification and wrote the offense report.  *Id.* at 14.

3.   At approximately 9:20 p.m., on July 1, 2004, Lieutenant Langston completed a Preliminary Investigation Report.  *Id.* at 15.  He recorded plaintiff's response to the charges as "I was not. I don't know what is going on."  *Id.* Lieutenant Baker was the approving supervisor on that date.  *Id.*

These disciplinary records, like plaintiff's habeas petition, do not indicate that plaintiff told the officers, who were investigating the charge, that he had been raped or assaulted by a gang member while McMillen watched on July 1, 2004.

The Court takes into account plaintiff's failure to report these cases and his lack of success in past litigation in assessing the credibility of his claims in this case.  *See Moody v. Miller*, 864 F.2d 1178, 1179 n.1 (5th Cir. 1989).

<u>Safe-Keeping</u>

The Eighth Amendment requires that prison officials protect prisoners from violence at the hands of their fellow prisoners.  *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994).  Being violently

7

assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. *Id.*

A prison official may not escape liability in a failure-to-protect claim "by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Id.* at 843. Moreover, prison authorities must protect not only against current threats, but also must guard against "sufficiently imminent dangers" that are likely to cause harm in the "next week or month or year." *Helling v. McKinney*, 509 U.S. 25, 33-34 (1993).

A prison official is liable only if he is deliberately indifferent to a substantial risk of serious harm. *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003). To be deliberately indifferent, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. In other words, the prison official must be subjectively aware of a substantial risk of serious harm to the inmate. *Adames*, 331 F.3d at 512. The official is not liable under the Eighth Amendment, however, if he "responded reasonably to the risk, even if the harm ultimately was not averted." *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004) (quoting *Farmer*, 511 U.S. at 844).

Plaintiff fails to state facts that would show that defendants B.R. Purvis, J.A. Walton, and K.A. Bond were deliberately indifferent to plaintiff's need for protection against predatory inmates because of his sexual orientation. Although Purvis, Walton, and Bond might have known of plaintiff's sexual orientation and might have been made aware of the assault by a TDCJ-ID employee at the Garza West Unit, plaintiff states no facts to show that Purvis, Walton, or Bond knew of a specific threat against plaintiff at the Goree Unit or that they assigned him to the general

8

population on June 23, 2004, with knowledge of sufficiently imminent dangers that might cause him harm.

Plaintiff also fails to state facts that would show that Warden Baggett acted with deliberate indifference to plaintiff's need for protection when she allegedly took no action to transfer him to another unit in response to plaintiff's grievance, filed on June 28, 2004, against supervisors Purvis, Walton, and Bond.

Furthermore, plaintiff has not alleged facts in his complaint, amended complaint, or more definite statement to that show that defendant Garza did not respond reasonably to the threat of assault on July 17, 2004.  By plaintiff's own account, Garza removed plaintiff from the chow hall when plaintiff reported that he had been slapped and threatened by a gang member.  Garza took plaintiff to a safekeeping area, and plaintiff was transferred to another unit within a month.

Plaintiff also concedes that he did not exhaust his administrative remedies by filing grievances against Garza.

Because plaintiff fails to allege facts giving rise to a claim of deliberate indifference to his need for protection, plaintiff's claims against Purvis, Walton, Bond, Garza, and Baggett will be dismissed as frivolous.

<u>Personal Involvement</u>

Plaintiff also fails to state facts that would give rise to a claim of deliberate indifference by the State Classification Committee and S.O. Woods, Jr.  In fact, plaintiff states no facts to show that either the committee or its chairman were personally involved in any of the events alleged in his complaint or that the policy in effect at the time of his incarceration on the Goree Unit was unconstitutional.

Section 1983 will not support a claim based on *respondeat superior* or vicarious liability. *Pierce v. Texas Dept. of Criminal Justice-Institutional Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994). "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381 (5th Cir. 1983). Each defendant must either actively participate in the acts complained of or implement unconstitutional policies that result in injury. *Mouille v. City of Live Oak, Texas*, 977 F.2d 924, 929 (5th Cir. 1992). Liability based on one's supervisory capacity exists if the supervisor is personally involved in the constitutional deprivation or a sufficient causal connection exits between the supervisor's wrongful conduct and the constitutional violation. *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). Supervisory liability exists even without overt personal participation in the offensive act if the supervisor implements "a policy that is 'itself [] a repudiation of constitutional rights' and [is] 'the moving force of the constitutional violation.'" *Oliver v. Scott*, 276 F.3d 736 (5th Cir. 2002) (quoting *Grandstaff v. City of Borger*, 767 F.2d 161, 169-70 (5th Cir. 1985)).

Accordingly, plaintiff's claims against the State Classification Committee and S.O. Woods, Jr. will be dismissed as frivolous.

Retaliation

To state a valid claim for retaliation under section 1983, an inmate must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999); *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). If the inmate is unable to point to a specific constitutional right that has been violated, the claim will fail. *Tighe v. Wall*,

100 F.3d 41, 43 (5th Cir. 1996)(dismissing an inmate's claim for failure to demonstrate a violation of a constitutional right).

Plaintiff contends that on July 1, 2004, Officer B.D. McMillen harassed him and retaliated against him by writing a disciplinary charge against him on account of some action by or against her co-workers Purvis, Walton, and Bond.  (Docket Entry No.1).  Plaintiff's contention is conclusory and fails to point to a specific constitutional right that has been violated or McMillen's intent to retaliate.

Likewise, plaintiff's claim that defendants Langston, Baker, and Davis retaliated against him, presumably by questioning him following the alleged sexual assault on July 1, 2004, is conclusory. Plaintiff again fails to point to a specific constitutional right that has been violated or to defendants's intent to retaliate.

Accordingly, plaintiff's retaliation claim against defendants McMillen, Langston, Baker, and Davis will be dismissed as frivolous.

<u>Claims Related to Disciplinary Conviction</u>

"[A] state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated." *Edwards v. Balisok*, 520 U.S. 641, 643 (1997) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994));*Clarke v. Stalder*, 154 F.3d 186 (5th Cir. 1998) (finding favorable ruling on request for injunctive relief would necessarily imply the invalidity of loss of good-time credits).  This principle applies not only when the prisoner challenges the judgment as a substantive matter but also when he challenges "procedures . . . such as necessarily to imply the invalidity of the judgment."

*Edwards*, 520 U.S. at 645.  A conviction for purposes of *Heck* includes a ruling in a prison disciplinary proceeding that results in a change to the prisoner's sentence, including the loss of good-time credits.  *Id.* at 641.

A favorable judgment on plaintiff's claim that defendant McMillen watched as he was sexually assaulted on July 1, 2004, would necessarily imply the invalidity of his disciplinary conviction for masturbating in front of McMillen on the same day at the same time as the alleged assault.  Plaintiff's disciplinary conviction has not been reversed, expunged, set aside, or called into question, as *Heck* mandates.  Accordingly, the Court will dismiss plaintiff's deliberate indifference claim against McMillen.

<u>Medical Care</u>

Plaintiff maintains that defendants McMillen, Langston, Baker, and Davis did not provide him with medical attention following the alleged July 1st sexual assault in violation of the Eighth Amendment.

The Eighth Amendment prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  A prison official acts with deliberate indifference if he or she knew of and disregarded an excessive risk to the inmate's health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002).  "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the [prohibited conduct]."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Plaintiff concedes that he did not request nor seek medical attention on July 1, 2004. (Docket Entry No.27).  Furthermore, plaintiff does not specify the physical injuries that he allegedly

suffered on July 1, 2004.  He complains of unnecessary complications in the treatment of his injuries, but admits that he did not ask for nor receive treatment for any injury.  He also complains of headaches, nightmares, and other psychological problems (Docket Entry No.13), and pain in the anus and knees, and of anxiety.  (Docket Entry No.27).  Section 1997(e) of 42 United States Code provides:  "No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  Because he has not specified the physical injury that he allegedly suffered on July 1, 2004, plaintiff's claim that he was denied medical attention on July 1, 2004, for his pain and emotional injuries will be dismissed as frivolous.

<u>MOTION FOR PRELIMINARY INJUNCTION</u>

Plaintiff is currently confined at the Stiles Unit in Beaumont, Texas.  He seeks an injunction ordering defendants and their successors to protect him from hostile and predatory offenders in the general population.  (Docket Entry No.26).  Because plaintiff cannot prevail on the merits of this case, his motion for injunctive relief will be denied.  *See Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 285 (5th Cir. 1998) (stating preliminary injunction may be granted only if the movant satisfies four requirements, the first of which is that there exists a substantial likelihood of success on the merits).

<u>CONCLUSION</u>

Based on the foregoing, the Court enters the following ORDERS:

1.      Plaintiff's motion for injunctive relief (Docket Entry No.26) is DENIED.

2.      Plaintiff's complaint is DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B).

3.       All claims against all defendants, except for plaintiff's deliberate indifference claim against defendant B.D. McMillen, which relates to his disciplinary conviction, are DISMISSED WITH PREJUDICE.

4.       Plaintiff's deliberate indifference claim against defendant McMillen , which relates to his disciplinary conviction, is DISMISSED WITHOUT PREJUDICE.

The Clerk will provide copies to plaintiff, to the TDCJ-ID Office of the General Counsel,

P.O. Box 13084, Capitol Station, Austin, Texas 78711, Fax: 512-2159, and to the District Clerk for

the Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler, Texas 75702, Attention:

Betty Parker.

Signed at Houston, Texas, on this 14th day of September, 2005.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE

14